UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHRISTOPHER STEELE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 13-cv-1089 (TSC) |
| FANNIE MAE, | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

Before the court are the parties' cross-motions for summary judgment. Plaintiff Christopher Steele filed a motion for partial summary judgment on his promissory estoppel claim. Defendant Fannie Mae, formally known as the Federal National Mortgage Association, filed a cross-motion for summary judgment on all of Steele's claims—breach of contract, promissory estoppel, fraudulent misrepresentation, and intentional infliction of emotional distress. Because Steele did not respond to Fannie Mae's arguments with respect to breach of contract and intentional infliction of emotional distress, those claims are dismissed as conceded.[1]

---

[1] *See Baptist Mem'l Hosp.-Golden Triangle v. Leavitt*, 536 F. Supp. 2d 25, 40 (D.D.C. 2008), *aff'd sub nom. Baptist Mem'l Hosp.-Golden Triangle v. Sebelius*, 566 F.3d 226 (D.C. Cir. 2009) ("A Party that fails to refute an opposing party's argument on Summary Judgment may be found to have conceded the point."); LCvR 7(b). The breach of contract claim would have otherwise been dismissed under the law-of-the-case doctrine, as Judge Lamberth held in an earlier opinion in this case that there was no enforceable contract between the parties. *See Steele v. Fannie Mae*, No. 13-01089, 2013 WL 5205898, at *2 (D.D.C. Sept. 13, 2013). Plaintiff's intentional infliction of emotional distress ("IIED") claim also fails as a matter of law because Plaintiff has come nowhere close to establishing such a claim. IIED claims require extreme and outrageous conduct by the defendant, and "[i]n the employment context, to constitute extreme and outrageous conduct, the conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Elhusseini v. Compass Grp. USA, Inc.*, 578 F. Supp. 2d

As to the remaining two claims, upon consideration of the parties' motions, as well as the responses thereto and the replies in support thereof, and for the reasons set forth below, Plaintiff's motion is DENIED and Defendant's motion is DENIED as to the promissory estoppel claim and GRANTED as to the fraudulent misrepresentation claim.

## I.   BACKGROUND

Plaintiff was hired for a position at Fannie Mae under the name Christopher Ferguson. (Def.'s Statement of Undisputed Facts ¶ 1). He chose the position with Fannie Mae over a similar position with W.R. Grace. (Pl.'s Reply Mem. Supp. Mot. Partial Summ. J. Ex. 14 ¶ 15). As part of the application process, Plaintiff entered his name in Fannie Mae's recruiting database as Christopher Ferguson. (Gillingham Decl. ¶ 3(b)). Plaintiff's recruiter later sent him instructions for his formal application, including to "provide your full legal name including your full middle name. (This name should be the same name which will be on the documents you will be providing for I-9 verification such as the driver's license and/or social security card)." (*Id.* at ¶ 3(e)) (emphasis omitted). The recruiter also instructed Plaintiff to provide all previous aliases. (*Id.*). After Plaintiff indicated that his name was Christopher Ferguson and that he had no middle name, his recruiter followed up to confirm his legal name. (Def.'s Cross-Mot. Ex. 6). In the written offer of employment, Fannie Mae explained that Plaintiff would "be required to complete an Employee Verification Form (I-9) and provide current documents that establish your identity and eligibility to work in the United States. This offer of employment is contingent upon you providing those documents." (*Id.* at Ex. 8).

---

6, 23 (D.D.C. 2008) (quoting *McManus v. MCI Commc'ns Corp.,* 748 A.2d 949, 958 (D.C. 2000)). Plaintiff alleges that Fannie Mae promised him continued employment and then reneged on that promise. Even assuming these facts as true, this is not the type of conduct that can support an IIED claim.

On his first day at Fannie Mae, May 6, 2013, Plaintiff notified human resources during the I-9 employment eligibility process that the name on his passport (Christopher Steele) did not match the name on his driver's license (Christopher Ferguson). (Gillingham Decl. ¶ 10). Because the person Fannie Mae hired—Christopher Ferguson—could not prove his identity, Fannie Mae was not able to verify his eligibility for employment. (*Id.* at ¶ 15). Per Fannie Mae policy, Plaintiff had 72 hours from the time he started work to prove his eligibility. (Def.'s Cross-Mot. Ex. 11). On each of May 6, 7, and 8, Fannie Mae sent Plaintiff an e-mail stating that if he could not prove his employment eligibility within 72 hours of his first day of employment, he would be terminated at the close of business on May 8. (*Id.*).

The principal dispute in this case involves a meeting on May 8 between Plaintiff, his supervisor Farley Price, and Shandell Harris, a representative from human resources. According to Plaintiff, "during the meeting . . . Defendant promised to place Plaintiff on administrative leave, perform a second background investigation using the names Christopher Ferguson and Christopher Steele, and allow Plaintiff to continue his employment with Fannie Mae if the second background investigation identified no new issues." (Pl.'s Mot. at 4). Plaintiff followed up in the ensuing two days to check on the status of the second background check. (*Id.* at 4-5).

Fannie Mae, unsurprisingly, tells a different story. According to Fannie Mae,

> Shandell Harris and Farley Price met with Plaintiff at or around noon on May 8 and informed him of the Company's decision to rescind the offer of employment because he had not produced valid work authorization documentation. Ms. Harris informed Plaintiff that Fannie Mae may reconsider its decision if he could produce such documentation and provide an explanation for why he failed to disclose his legal name on the application or to the recruiter. Harris informed Plaintiff that the Company would perform a background check under his alleged legal name "Steele," which would streamline things *if the Company were to hire him back*.
>
> In that May 8, 2013 conversation, neither Ms. Harris nor Mr. Price "promised" or otherwise indicated to Plaintiff that he would be placed on administrative leave or

3

otherwise re-employed by Fannie Mae upon the completion of the background check.

(Def.'s Statement of Undisputed Facts ¶¶ 21-22) (emphasis added) (citation omitted).

Whatever may have happened at the May 8 meeting, the parties agree that on the morning of May 14, Fannie Mae received notice that the second background check resulted in the same information as the first. (*Id.* at ¶ 28; Pl.'s Mot. Attach. 5). That same day, Fannie Mae sent Plaintiff a letter stating that a preliminary decision had been made "to rescind your conditional offer of employment and not employ you" based on the discrepancies with his name. (Def.'s Cross-Mot. Ex. 16). Fannie Mae requested that Plaintiff respond, and stated that any information he provided "will be used in consideration to reinstate your employment with Fannie Mae." (*Id.*). On May 17, 2013, after not receiving an adequate explanation for the difference in Plaintiff's names, Fannie Mae sent another letter to inform Plaintiff that it had "made the decision to rescind your conditional offer of employment and not employ you." (Pl.'s Mot. Attach. 3A).

Plaintiff originally brought this suit in D.C. Superior Court. (Notice of Removal). After Fannie Mae removed the case to district court, it filed a motion to compel arbitration pursuant to Fannie Mae's dispute resolution policy. (Mot. to Compel). Judge Lamberth denied the motion, finding that because Fannie Mae did not treat Plaintiff as an employee, there was no valid and enforceable agreement between the parties. *See Steele v. Fannie Mae*, No. 13-01089, 2013 WL 5205898, at *2 (D.D.C. Sept. 13, 2013).

**II.  LEGAL STANDARD**

a. Motion for Summary Judgment

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

4

P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  Summary judgment may be rendered on a "claim or defense . . . or [a] part of each claim or defense." Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination.  An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Holcomb*, 433 F.3d at 895 (quoting *Liberty Lobby*, 477 U.S. at 248) (citation omitted).  The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc., v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987).

In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255; *see also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006) ("We view the evidence in the light most favorable to the nonmoving party and draw all inferences in its favor.").  The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The non-movant "is

required to provide evidence that would permit a reasonable jury to find [in his favor]." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

### III. DISCUSSION

#### a. Promissory Estoppel

Assessing a promissory estoppel claim requires answering four questions: "First, was there a promise?  Second, should the promisor have expected the promisee to rely on the promise?  [Third,] did the promisee so rely to his detriment?  [Fourth,] would injustice result from a failure to enforce the promise?"  *Bender v. Design Store Corp.*, 404 A.2d 194, 196 (D.C. 1979).

Plaintiff argues that Fannie Mae promised to place him on administrative leave pending the resolution of a second background check, and that he relied on that promise to his detriment. (Pl.'s Mot. at 4).  Plaintiff alleges that after he received a voicemail on May 14 indicating that Fannie Mae was conditionally revoking his job offer, he contacted W.R. Grace to see if he could resurrect a job offer he had previously turned down in favor of the Fannie Mae position.  (*Id.* at 5).  W.R. Grace responded the next day, saying that it "would have loved to have you join the team, [and] had you reached out to me sooner we would have been able to get you on board," but the position had been accepted by another candidate on May 13.  (*Id.* Attach. 11).  Plaintiff argues that had Fannie Mae been clear on May 8 that he would be terminated, he would have contacted W.R. Grace sooner and gotten that position.  (*Id.* at 11-12).  Instead, Plaintiff missed that opportunity and did not find another job until 38 weeks later.  (*Id.* at 12).

Fannie Mae asserts that the statements Plaintiff alleges were made at the May 8 meeting never occurred, and that Plaintiff's only evidence are his own self-serving statements.  (Def.'s Cross-Mot. at 7-9).  Fannie Mae alleges that Plaintiff was warned repeatedly before and after his

6

first day that he had to provide all aliases during the application process and that his failure to do so could lead to his termination. (Gillingham Decl. ¶ 3(e); Def.'s Cross-Mot. Ex. 11). Fannie Mae also alleges that Plaintiff was warned that his failure to prove his employment eligibility would lead to his termination—in fact, Fannie Mae e-mailed Plaintiff on May 6, 7, and 8 to notify him of that fact. (Def.'s Cross-Mot. Ex. 11). Lastly, Fannie Mae argues that Plaintiff was not placed on leave on May 8, but was terminated. (Price Decl. ¶ 16; Harris Decl. ¶ 8).

> *i. Was there a promise?*

The first question is whether there is evidence from which a reasonable jury could find that Fannie Mae promised Plaintiff that it would allow him to continue his position subject to a second background check. Fannie Mae argues that Plaintiff's only evidence of the alleged promise are Plaintiff's own statements, and that the indisputable evidence shows that Plaintiff was terminated on May 8. (Def.'s Cross-Mot. pp. 8-9). However, the evidence is not so clear.

For example, Fannie Mae relies on record evidence indicating that it terminated Plaintiff in its internal systems after the May 8 meeting. (*Id.* Ex. 13). However, Fannie Mae originally submitted a "Voluntary Termination" request to HR, but then changed it to an "Involuntary Termination" request five minutes later. (*Id.*). This casts doubt on what exactly happened at the meeting—if Plaintiff was told that he was terminated, it is not clear why Fannie Mae would have originally cast his departure from the company as voluntary.

Fannie Mae also argues that it could not have promised to put Plaintiff on administrative leave on May 8 because he was terminated on that date. (*Id.* at 2). This allegation is also not clearly supported by the record. In an e-mail dated May 17 (the day Plaintiff was finally terminated), Plaintiff's recruiter asked Fannie Mae human resources whether Plaintiff would be paid for the days he worked (May 6-8) and the two weeks he was on leave. (Pl.'s Mot.

Attach. 9). Shandell Harris responded, "We should definitely pay him for the three days but what did we communicate to him when he went out on leave? Did we tell him he was on paid administrative leave?" (*Id.*). This e-mail does not suggest that Fannie Mae—or Shandell Harris specifically, who was at the May 8 meeting—understood Plaintiff to have been permanently terminated on May 8. It could be read to suggest that HR knew he was on leave, but did not know if it was paid or unpaid leave. While there is other evidence in the record that could be used to show that Fannie Mae believed Plaintiff had been terminated as of May 8, the May 17 e-mail is evidence upon which Plaintiff could rely in proving his assertions.

Lastly, in its May 17 letter to Plaintiff, Fannie Mae stated that "we have made the decision to rescind your conditional offer of employment and not employ you." (Pl.'s Mot. Attach. 3A). Fannie Mae does not explain how it could rescind an offer of employment if that employment had already been terminated, or why its May 14 and May 17 letters were necessary if Plaintiff had already been terminated on May 8. Fannie Mae also does not explain why Plaintiff would have repeatedly checked in with Fannie Mae following the May 8 meeting if he had already been fired. (*See*, *e.g.*, Pl.'s Mot. Attach. 3A; Pl.'s Mot. Attach. 4).

Given all these discrepancies, there remains a disputed issue of material fact regarding whether Fannie Mae in fact promised to put Plaintiff on leave and continue employing him pending completion of a second background check.

### ii. *Should Fannie Mae have expected Plaintiff to rely on its promise?*

The issue of whether Fannie Mae should have expected Plaintiff to rely on its promise is inextricably linked with whether a promise was ever made. If Fannie Mae promised Plaintiff continued employment subject to the second background check, it should have expected him to rely on that promise. If no promise was ever made, there could be no expectation of reliance.

Fannie Mae contends that even if it did make a promise, it should not have expected Plaintiff to rely on that promise because Fannie Mae made it abundantly clear that Plaintiff would have to prove his employment eligibility in order to start work. (Def.'s Cross-Mot. at 8). Thus, Fannie Mae argues, because Plaintiff never proved his employment eligibility, he could not have relied on any promise it may have made. (*Id.*). The record contradicts this claim, however.

For example, Fannie Mae admits in internal e-mails that Plaintiff could have established his employment eligibility using his passport if Fannie Mae had changed his name in its system from Christopher Ferguson to Christopher Steele. (*Id.* at Ex. 12). Indeed, based on the record, employment eligibility may not have been the reason Plaintiff was eventually terminated. (*See id.* ("[H]e's not being terminated due to an incomplete I-9.")). In fact, Fannie Mae admits in its own declarations that Plaintiff was terminated not only because he was not forthright about his name during the application process, but also because of an apparent dispute he had with a parking garage attendant. (Price Decl. ¶¶ 18, 20). Fannie Mae cannot now, at the summary judgment stage of these proceedings, rely on Plaintiff's employment eligibility as the precondition which prevents reliance on its alleged promise, where that precondition could have been satisfied, and may not have been the actual or sole reason for Plaintiff's termination.

In addition, Fannie Mae argues that it was not reasonable for Plaintiff to rely on the Fannie Mae position when he turned down the W.R. Grace opportunity because the Fannie Mae position was at-will, meaning that Plaintiff could be terminated at any time for any reason. (Def.'s Cross-Mot. at 5). While Fannie Mae is correct that, generally, at-will employment arrangements do not give rise to reasonable expectations of future employment, the principle is not immutable. An employer may promise an at-will employee that he will remain employed,

9

which may give rise to a promissory estoppel claim. *See Woodruff v. Nat'l Opinion Research Ctr.*, 505 F. Supp. 2d 138, 143 (D.D.C. 2007) (holding that the mere fact of at-will employment does not render unreasonable an at-will employee's reliance on "representations that left him with the impression that he would be working" until a given point in time); *Eller v. Houston's Rest., Inc.*, No. 83-3833, 1984 WL 49041, at *2 (D.D.C. Oct. 15, 1984) ("Plaintiff's affidavit reveals that this 'issue of fact'—the intent of the parties—remains in dispute. Regardless of the printed language on plaintiff's application form, defendant may have assured plaintiff that she would be employed so long as she performed satisfactorily.").

Here, Plaintiff alleges that on May 8, Fannie Mae placed him on leave and promised to allow him to continue his employment after the successful completion of a second background check. (Pl.'s Mot. at 2). In finding that a genuine dispute exists with regard to the first element of promissory estoppel, this court has already determined that a reasonable jury could conclude that such a promise was made to Plaintiff. It necessarily follows that a reasonable jury could also conclude that such a promise was tantamount to an assurance that Plaintiff would not be terminated until that background check was completed, if he was terminated at all. Further, a reasonable jury could find that Plaintiff relied on that assurance in failing to pursue the W.R. Grace position during the period from May 8 until the completion of the second background check on May 14. For these reasons, there remains a genuine dispute over whether Fannie Mae should have expected Plaintiff to rely on its alleged promise.

   *iii. Did Plaintiff rely on the promise to his detriment?*

Plaintiff alleges that he relied on Fannie Mae's promise to his detriment because, had Fannie Mae notified him s that he would be terminated regardless of the outcome of the second background check, he would have obtained the W.R. Grace position. (Pl.'s Mot. at 2-3). Fannie

Mae argues that because it could not have known about the W.R. Grace position, it should not be responsible for Plaintiff's missed opportunity. (Def.'s Reply Mem. Supp. Cross-Mot. Summ. J. at 11).

While there may be a question as to whether it was reasonably foreseeable that Plaintiff would miss out on a job opportunity after he had already accepted a job with Fannie Mae, as discussed above, it does seem reasonably foreseeable that he would not seek other employment opportunities during the time he allegedly believed he might be reinstated—*i.e.*, from May 8 through at least May 14. Thus, because Plaintiff can point to evidence indicating that the W.R. Grace position would have been available to him up until May 13, there is a genuine issue of material fact concerning whether Plaintiff relied on Fannie Mae's alleged promise to his detriment. (Pl.'s Mot. Attach. 11).

> iv. *Would injustice result from not enforcing the promise?*

Plaintiff argues that injustice would result from not enforcing Fannie Mae's alleged promise to him because, as a result of Fannie Mae breaking its alleged promise, he missed out on a job opportunity with W.R. Grace and spent almost a year trying to find another job. (*Id.* at 12). Fannie Mae, however, points to the fact that Plaintiff's offer of employment was "specifically conditioned . . . upon the successful presentation of documentation to establish his identity and eligibility for employment in the United States," and that Plaintiff was told "each day of his three days of employment that he would be terminated if he could not fulfill his obligation to verify his identity and eligibility to work in the U.S., . . . which he could not do." (Def.'s Cross-Mot. at 8).

Courts in this district have granted summary judgment to defendants where the alleged promise at issue in a promissory estoppel claim was conditioned on some other event. *See, e.g., Osseiran v. Int'l Fin. Corp.*, 889 F. Supp. 2d 30, 35 (D.D.C. 2012) ("A promise to do something

11

does not reasonably induce reliance where, as here, the promissor repeatedly and expressly conditions fulfilling the promise on the execution of formal documentation."); *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 77, 97-98 (D.D.C. 2003) ("Reliance on the oral statements is also unreasonable given that the parties were aware that the Reorganization Agreement could bar oral modifications and the defendants explicitly refused to commit to the agreement in writing."). Thus, if the alleged promise was in fact conditioned on Plaintiff establishing his employment eligibility, and Plaintiff did in fact fail to do so, no injustice would result from failing to enforce the conditional promise, given that its condition had not been met.

However, with regard to whether Fannie Mae should have expected Plaintiff to rely on its alleged promise, the record in this case contains internal Fannie Mae e-mails indicating that Plaintiff could have established his employment eligibility using his passport if Fannie Mae had simply changed his name in its system. (Def.'s Cross-Mot. Ex. 12). Thus, there appears to be a genuine issue of material fact as to whether the conditions for the alleged promise were actually met. Likewise, the evidence indicating that Plaintiff was "not . . . terminated due to an incomplete I-9" and that an alleged dispute between Plaintiff and a parking garage attendant played a role in his termination (*Id.*; Price Decl. ¶ 20), belie Fannie Mae's argument that "Plaintiff's own failure to provide such documentation necessitated his termination from Fannie Mae." (Def.'s Cross-Mot. at 8). Thus, for the same reasons that Fannie Mae cannot establish on the present record that it should not have expected Plaintiff to rely on its alleged promise, Fannie Mae also cannot now rely on Plaintiff's employment eligibility as the precondition which prevents any injustice, as that precondition could have been satisfied, and Plaintiff's alleged failure to satisfy it may not have been the actual reason for his termination.

When evaluating the injustice prong, courts must also weigh other considerations, such as "the reasonableness of the promisee's reliance, . . . its definite and substantial character in relation to the remedy sought, . . . the formality with which the promise is made, and . . . the extent to which such other policies as the enforcement of bargains and the prevention of unjust enrichment are relevant." RESTATEMENT (SECOND) OF CONTRACTS § 90 cmt. b (1981) (the "Restatement"); *see also Vila v. Inter–Am. Inv. Corp.*, 570 F.3d 274, 282 (D.C. Cir. 2009) (quoting Restatement).

Given that the court has already found that there is a genuine dispute over whether Fannie Mae should have expected Plaintiff to rely on its alleged promise, it necessarily follows that there is also a genuine dispute over whether Plaintiff's reliance was reasonable. Additionally, there is a genuine issue of material fact regarding whether Plaintiff's reliance was definite and substantial. Plaintiff alleges that, from the May 8 meeting until May 14, he refrained from reaching out to W.R. Grace in reliance on the alleged May 8 promise, and that this cost him a job that he would have been able to accept at any point from May 8 through May 13, when the W.R. Grace position was filled. The formality consideration also weighs in favor of finding the existence of a genuine issue of material fact, given that Plaintiff alleges that the promise at issue in this case was made at a May 8 meeting with his supervisor and a representative from Fannie Mae's human resources department—a fairly formal setting for an oral promise to be made. Moreover, while the policy of unjust enrichment referenced by the Restatement is not relevant here, the policy of "the enforcement of bargains" is implicated by Plaintiff's allegations.

For these reasons, there remains a genuine dispute over the material fact of whether injustice would result from failing to enforce Fannie Mae's alleged promise.

b.     Fraudulent Misrepresentation

Plaintiff brings a fraudulent misrepresentation claim premised on the same facts as his promissory estoppel claim. "To plead a *prima facie* claim for fraudulent misrepresentation, a plaintiff must allege '(1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with intent to deceive, and (5) action . . . taken in reliance upon the representation.'" *Rodriguez v. Lab. Corp. of Am. Holdings*, 13 F. Supp. 3d 121, 128-29 (D.D.C. 2014) (quoting *Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002)). In addition, a plaintiff must show that he or she suffered some injury as a consequence of his or her reliance on the misrepresentation. *See Chedick v. Nash*, 151 F.3d 1077, 1081 (D.C. Cir. 1998).

Viewing the facts in the light most favorable to Plaintiff, the court finds that he has failed to point to competent evidence that could establish all of the essential elements of his claim for fraudulent misrepresentation, as he must in order to survive summary judgment on that claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). While genuine issues of material fact may exist for some of these elements, Plaintiff's fraudulent misrepresentation claim runs aground on the fourth prong—intent to deceive. Plaintiff has not provided any evidence that Fannie Mae intentionally deceived him when it made the alleged promise. Indeed, even assuming that the alleged promise was made to Plaintiff at the May 8 meeting, there is simply nothing in the record that would indicate that this promise was made with any intent to deceive as opposed to, for example, the promise having been made and then subsequently reneged on for other reasons, such as Plaintiff's failure to establish his employment authorization or the altercation he had with a parking garage attendant. Thus, regardless of what was said at the May 8 meeting and what transpired from the time of the meeting until Plaintiff's final

termination on May 17, there is simply nothing in the record that would indicate that the alleged May 8 promise was made with any fraudulent intent.

Because Plaintiff has failed to prove at least one of the five essential elements of fraudulent misrepresentation, there is no genuine issue of material fact with respect to that claim, and Fannie Mae is entitled to judgment as a matter of law on it.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment on his claim for promissory estoppel is DENIED, and Defendant's motion for summary judgment is GRANTED as conceded as to Counts I and IV (breach of contract and intentional infliction of emotional distress), DENIED as to Count II (promissory estoppel), and GRANTED as to Count III (fraudulent misrepresentation).

Date:  September 29, 2015

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge